OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order of the trial court suppressing evidence upon the ground that it was obtained as the result of an unlawful search and seizure. We conclude that there is evidence in the record to support each of the trial court's conclusions that: (1) the scope of consent given to search a residence *Page 2 
was limited to a search for a particular person, not for firearms; and (2) crack cocaine contained in a plastic baggie that was partially visible in a shoe in a closet in the residence was not established as lying within the "plain view" exception to the warrant requirement, where there is no evidence that the police officer recognized the baggie, or any contents thereof, as contraband. Accordingly, the order of the trial court from which this appeal is taken is Affirmed.
 I {¶ 2} The trial court made the following findings of fact, which are supported by the record:
 {¶ 3} "Crystal Langer . . . is an Ohio parole officer. In January of 2007, Tory Perry, who had been convicted of murder, was released from prison on parole under the supervision of Parole Officer Langer. As a standard condition of parole, Perry executed a form authorizing his parole officer to search his residence, person, and motor vehicle at any time.
 {¶ 4} "In late April 2007, Officer Langer received an anonymous phone call indicating that Perry possibly had firearms in his residence and was dealing crack cocaine out of his residence, located at 2961 Revels Avenue in Dayton, Ohio. As a result, Langer's supervisor authorized a group of parole officers to search Perry's residence for contraband.
 {¶ 5} "On May 1 at 10:00 a.m., Langer and three other officers arrived at Perry's residence, a two-story apartment. Langer and Officer Seefring knocked on the door. Perry's brother — the Defendant[-appellee] Daishawn Riley — opened the door. Langer *Page 3 
asked, `Is Tory Perry home?' Riley responded, `No, he's not.' Langer asked, `Do you mind if I come in?' Riley replied, `No, I don't.'Suppression Hearing Transcript at 5. The officers entered the residence.
 {¶ 6} "Officer Langer asked Riley for consent to search the residence. Langer's specific testimony, which this Court found to be credible, was as follows:
 {¶ 7} "`Me and another officer, there was four officers total. Me and another officer went to the door, knocked on the door. I had been there on several occasions prior. His brother answered the door. I asked him if Tory Perry was home. He said, no, he's not. I said, do you mind if I come in? Says, no, I don't. I went into the residence along with Officer Seefring and asked him again for consent to search the residence. We wanted to look to make sure Tory was not there and make sure there was no firearm in the residence. He again gave me consent to search at which time I called the two officers, Officer Tim Jones and Chris admitted into the residence.' Id. at 5.
 {¶ 8} "Officer Langer went upstairs alone and looked into the bathroom and two bedrooms to `clear' the upstairs — that is, to make sure no one else — particularly Perry-was in the residence.
 {¶ 9} "(The Defendant Riley testified that Langer had asked him where Perry's bedroom was located and that he, Riley, went upstairs and pointed to Perry's bedroom. This Court did not find this testimony to be believable. Officer Langer credibly testified that her sole purpose was to `clear' the upstairs to be sure Perry, a convicted murderer, was not present. In dealing with such a risky situation, it seems unlikely that the officer would have had Tory err's [sic] associate accompany her upstairs.)
 {¶ 10} "After `clearing' the upstairs, Langer came back downstairs and remained *Page 4 
there with Riley, while Senior Parole Officer Jones went upstairs to `clear the house' a second time. Jones also wanted to be certain that Perry, a person with a violent history, was not present. Officer Jones first started to search the `farthest bedroom.' Jones later learned this was Riley's bedroom. As Jones was searching Riley's bedroom, Riley came upstairs to use the bathroom. Riley noticed Jones was in his bedroom, but said nothing. Jones testified:
 {¶ 11} "`Q. Did you find anything in the bedroom?
 {¶ 12} "`A. Yes.
 {¶ 13} "`Q. What did you find?
 {¶ 14} "`A. Found a quantity of crack cocaine and some money.
 {¶ 15} "`Q. Where did you locate the items?
 {¶ 16} "`A. Crack cocaine was in his shoe in a closet. It was a plastic baggy partially out of the shoe so it didn't even have — I could see the baggy. And then I lifted a liner out of the trash can and there was money at the bottom of the trash can.
 {¶ 17} "`Q. Was this a men's shoe that you located the crack cocaine?
 {¶ 18} "A. Yeah, appeared to be a tennis shoe.' Id. at 19.
 {¶ 19} "On cross-examination, Jones testified that `You could not see the shoes real clearly.' Id. at 28."
 {¶ 20} We would add to the trial court's recitation of the facts that Jones, the officer who retrieved the evidence, gave the following testimony:
 {¶ 21} "Q. I think there's — you were not concerned about whose bedroom it was. The function was to search that first bedroom? *Page 5 
 {¶ 22} "A. Well, at that time, I was not concerned about whose bedroom they were. There were not any search issues. I was going to look forcontraband. Also looking for Mr. Perry." (Emphasis added.)
 {¶ 23} Tory Perry arrived while the search was in progress. Upon being informed that contraband had been found, Perry began insisting that Riley tell the police the contraband belonged to Riley. The police separated Perry and Riley. Riley admitted that the contraband was his, despite the fact that the police were rather obvious in preferring that Perry, the paroled murderer, be established as the owner of the contraband.
 {¶ 24} Riley was arrested and charged with one count of Possession of Cocaine, in an amount equal or exceeding ten grams, but less than 25 grams, a felony of the second degree. He moved to suppress the crack cocaine and the money, contending that they were obtained as the result of an unlawful search and seizure.
 {¶ 25} Following a hearing, the trial court agreed with Riley, and entered an order suppressing the evidence. From this order, the State appeals.
 II {¶ 26} The State's sole assignment of error is as follows:
 {¶ 27} "THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE EVIDENCE IN THIS CASE BECAUSE THE RECORD SHOWS BY A PREPONDERANCE OF THE EVIDENCE THAT RILEY CONSENTED TO A FULL-BLOWN SEARCH OF HIS RESIDENCE."
 {¶ 28} The State acknowledges that because the search of the residence was *Page 6 
without a warrant, the State was required to establish, by clear and convincing evidence, that consent to the search was freely and voluntarily given, citing State v. Posey (1988), 40 Ohio St.3d 420, 427,534 N.E.2d 61, certiorari denied (1989), 492 U.S. 907, 109 S.Ct. 3217,106 L.Ed.2d 567.
 {¶ 29} The trial court found that the State had satisfied its burden of establishing Riley's consent to a search of his residence, but only to the extent of having consented to a search limited in scope to a search for his brother, Tory Perry, not a search for firearms, as claimed by the State, much less a search for contraband, generally, in which the officer who found the crack cocaine and the money, Timothy Jones, testified he was engaged. In our view, the evidence in the record supports this finding.
 {¶ 30} Langer testified that she indicated to Riley that they were looking for his brother when she asked him "if Tory Perry was home." From this, Riley could reasonably have concluded that the scope of their search was limited to a search for Tory Perry. Langer testified that: "We wanted to make sure Tory was not there and make sure there was no firearm in the residence," but she never testified that her concern about firearms was communicated to Riley. The State had the burden of establishing consent to the search, and the trial court could reasonably find, as it did, that the State failed to prove that it obtained consent to a search for firearms, as opposed to a search for Tory Perry.
 {¶ 31} Even if the trial court had erred in making this finding concerning the scope of the search to which Riley consented, this error would have been harmless, in view of the trial court's further finding that the State failed to prove that the evidence seized without a warrant was in the plain view of the officer making the seizure, Timothy Jones. *Page 7 
As the trial court noted, the burden of proving the applicability of the plain-view exception to the warrant requirement is upon the State.State v. Pinson (August 26, 2005), Montgomery App. No. 20927.
 {¶ 32} "The following test is used to validate a law enforcement officer's warrantless seizure of an object in plain view: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed, (2) the officer has a lawful right of access to the object, and (3) the incriminating character of the object is immediately apparent." State v.Strothers (December 22, 2000), Montgomery App. No. 18322, citingState v. Scott M. (1999), 135 Ohio App.3d 253, 261, citing Horton v.California (1990), 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308,110 L.Ed.2d 112, 122-123, quoted by the trial court in its decision.
 {¶ 33} Even if Officer Jones was properly engaged in a search for firearms when he looked in the closet, his testimony that he saw what appeared to be a tennis shoe, but "not . . . real clearly," with a plastic baggie partially out of the shoe, falls short of establishing that the incriminating character of the object was immediately apparent to him. He did not testify that he observed the crack cocaine in the baggie before he retrieved the baggie from the shoe. As for the money found under the liner in the trash can, even if Jones was properly engaged in a search for firearms at that time, there was nothing in his testimony, absent the prior, unlawful recovery of the crack cocaine, from which he could reasonably have determined that the money was either contraband or evidence of criminal conduct. It is easy to imagine innocent motives for hiding money in a place like underneath a trash can liner even in better neighborhoods, let alone in less secure neighborhoods. *Page 8 
 {¶ 34} We agree with the trial court that even if Riley's consent to the search included within its scope a search for firearms, the retrieval of the crack cocaine and the money would still not have satisfied the plain-view exception to the warrant requirement.
 {¶ 35} The State's sole assignment of error is overruled.
 III {¶ 36} The State's sole assignment of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.
WOLFF, P.J., and GRADY, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Johnna M. Shia
Jeffrey T. Gramza
 Hon. Dennis J. Langer *Page 1