[Cite as *State v. Smith*, 2012-Ohio-845.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :        Appellate Case No. 24540
         Plaintiff-Appellee                      :
                                                 :        Trial Court Case No. 2010-CR-2297
v.                                               :
                                                 :
SHAWN D. SMITH                                   :        (Criminal Appeal from
                                                 :         Common Pleas Court)
         Defendant-Appellant              :
                                                 :
                          · · · · · · · · · · ·

O P I N I O N

Rendered on the 2nd day of March, 2012.

· · · · · · · · · · ·

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
         Attorney for Plaintiff-Appellee

TARA C. DANCING, Atty. Reg. #0077277, 1158 Kauffman Avenue, Fairborn, Ohio 45324
         Attorney for Defendant-Appellant

· · · · · · · · · · · · ·

HALL, J.

{¶ 1}    Shawn D. Smith appeals from his conviction and sentence following a

no-contest plea to one count of marijuana possession, in an amount of 5,000 grams or greater

but less than 20,000 grams, a third-degree felony.

{¶ 2} In his sole assignment of error, Smith contends the trial court erred in overruling his motion to suppress evidence.

{¶ 3} The record reflects that Smith was charged with possession of marijuana and possession of drug paraphernalia. He filed a suppression motion in October 2010. The trial court held a November 4, 2010, hearing on the motion. The only witnesses at the hearing were Dayton police officers. One of the officers, Bryan Dedrick, testified that he responded to 2722 North Main Street on July 23, 2010 to investigate a reported shooting. Dedrick and another officer approached the residence, and Dedrick knocked on the door. Smith opened the door as other officers arrived. Dedrick told Smith about the shooting complaint and asked if the officers could enter the house to make sure no one was shot. Smith consented. Several officers then entered the house to look for a shooting victim. Upon entering the house, Dedrick noticed that it contained little furniture. In the kitchen, he saw marijuana, scales, and plastic baggies next to the stove. He also smelled a "pungent" odor of raw marijuana in the house. Another officer saw what appeared to be heroin in a baggie and a handgun on a mantle in the living room. Based on these observations, sergeant Mark Speirs removed Smith from the house and placed him in a police car.

{¶ 4} While in an upstairs bedroom, officer Kevin Cooper observed a "brick" of currency wrapped with a rubber band sticking out of a floor register cover. Cooper retrieved the currency, which he had seen without touching the cover. Another officer, Dan Mamula, testified about looking for a shooting victim in a first-floor closet. After looking inside the closet, Mamula closed the door. As he did, he glanced down and saw a large clear plastic bag containing what appeared to be marijuana. The bag was inside an air-return vent on the floor.

A second officer, Sean Humphrey, also testified about seeing the bag in the vent. Humphrey was able to see a "green, leafy, substance" in the bag without manipulating the grate covering the vent. Humphrey proceeded to remove the grate and retrieve the bag, which he believed contained marijuana. As he removed the bag from the vent, Humphrey felt three or four more bags inside the hole. He removed them as well. Humphrey then looked inside the vent and, using a flashlight, saw additional marijuana bags and a rifle farther back. He proceeded to remove a few more bags and the rifle. When he could not reach all of the remaining bags, Humphrey went to the basement, removed a duct-work cover, and retrieved the ones he had been unable to reach from above. Police discovered a total of thirteen bags in the hole, and each contained approximately one pound of marijuana.

{¶ 5}   Based on the foregoing facts, the trial court overruled Smith's motion to suppress in a ruling from the bench. The trial court later overruled a motion for reconsideration of its suppression ruling.[1] Smith pled no contest to the marijuana-possession charge, a third-degree felony, and the State dismissed the drug-paraphernalia charge. The trial court sentenced Smith to community control and imposed other sanctions. This appeal followed.

{¶ 6}   "Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

---

[1] In its written decision denying reconsideration, the trial court stated: "On December 16, 2010, Judge Wagner overruled Defendant's Motion to Suppress upon which an evidentiary hearing had been held. For the reasons stated in Judge Wagner's ruling from the bench, Defendant's motion to suppress is overruled." (Doc. #25 at 1). Unfortunately, the record before us does not include Judge Wagner's "oral ruling from the bench" or any recording of it.

applicable legal standard." *State v. Leveck*, 2d Dist. Montgomery No. 23970, 2011-Ohio-1135, ¶8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.

**{¶ 7}** In the present case, the facts are established by the officers' uncontroverted hearing testimony. The question is whether those facts reveal a Fourth Amendment violation. We agree with the trial court that they do not. As set forth above, several officers arrived at 2722 North Main Street in response to a call reporting a shooting. Smith answered the officers' knock at his door. Officer Dedrick asked whether they could enter the house to search for a shooting victim. Smith consented. Nothing in the record indicates that his consent was anything other than voluntary. Therefore, the officers' entry into the home was lawful. *State v. White*, 2d Dist. Montgomery No. 23905, 2011-Ohio-503, ¶13 (recognizing that voluntary consent justifies a warrantless entry into a home).

**{¶ 8}** Having obtained permission to enter to search for a shooting victim, the officers were permitted to search anywhere a victim reasonably might be found. *State v. Arrington*, 96 Ohio App.3d 375, 377, 645 N.E.2d 96 (12th Dist.1994) ("The scope of a consent search is limited by the terms of its authorization and is generally defined by the expressed object of the search."). As noted above, while conducting their lawful search, officers saw marijuana, scales, clear plastic baggies, a "brick" of currency, and a handgun in plain view. As he was closing a closet door, officer Mamula also looked down and noticed a large clear plastic bag containing what appeared to be additional marijuana. (Hearing transcript at 75). On cross examination, Mamula stated that it was not "immediately apparent" that the baggie contained marijuana until he took a "closer look." (*Id*. at 82). Upon looking closely, however, Mamula believed that it was in fact marijuana. (*Id*. at 90). Officer Humphrey also saw the bag in the

vent. He described it as containing a "green, leafy, substance." (*Id*. at 95). The record reflects that Humphrey took pictures of the bag in the vent before the cover was removed. (*Id*. at 84, 95). Based on his testimony and our review of photographs showing what the officers saw, we believe the initial quart-size bag of marijuana was subject to seizure under the plain-view exception of the Fourth Amendment's warrant requirement. *See, e.g.*, *State v. Riley*, 2d Dist. Montgomery No. 22517, 2008-Ohio-2896, ¶32 (noting that the plain-view doctrine applies where (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be viewed, (2) the officer had a lawful right of access to the object, and (3) the incriminating character of the object was immediately apparent).

{¶ 9} While retrieving the bag in plain view, Humphrey felt additional bags in the hole. (*Id*. at 96, 104-106). Having seen one large bag of marijuana in plain view in the vent, Humphrey had probable cause to believe the other bags he felt in the vent also contained marijuana. *Compare State v. Strothers*, 2d Dist. Montgomery No. 18322, 2000 WL 1867594, *3 (Dec. 22, 2000) (applying the analogous plain-view exception to find no Fourth Amendment violation where, during the course of removing exposed evidence, an officer "discovered other evidence below it"). Therefore, the seizure did not violate the Fourth Amendment.

{¶ 10} Finally, having lawfully retrieved several bags of marijuana from the vent, we do not believe Humphrey created any meaningful invasion of Smith's privacy interest when he peered into the same hole and saw more marijuana bags beyond his reach. The fact that Humphrey shined a flashlight into the hole does not persuade us otherwise. Id.; *see*, *also*, *State v. Kirk*, Montgomery No. 8249, 1984 WL 5434, *3 (Jan. 26, 1984) (recognizing "that the use

of a flashlight does not in and of itself constitute a search"). Upon seeing the additional marijuana bags, Humphrey had a legal right to retrieve them as well.

{¶ 11} Based on the reasoning set forth above, we conclude that the trial court properly overruled Smith's suppression motion. His assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Tara C. Dancing
Hon. Steven K. Dankof