[Cite as *State v. Glover*, 2015-Ohio-3707.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.   CA2015-01-002 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 9/14/2015 |
| - vs - | | |
| | : | |
| GENE GLOVER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2013-2268

Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Timothy J. Kelly, 108 South High Street, P.O. Box 467, Mt. Orab, Ohio 45154, for defendant-appellant

**S. POWELL, J.**

{¶ 1}   Defendant-appellant, Gene Glover, appeals from his conviction in the Brown County Court of Common Pleas after a jury found him guilty of trafficking in heroin and possession of heroin.  For the reasons outlined below, we affirm.

{¶ 2}   On November 14, 2013, the Brown County Grand Jury returned an indictment charging Glover with trafficking in heroin in violation of R.C. 2925.02(A)(2) and possession of

heroin in violation of R.C. 2925.11(A), both second-degree felonies. The charges also included several forfeiture specifications.[1] Following his arrest, on April 29, 2014, Glover filed a motion to suppress. The trial court then held a hearing on the matter, during which time the trial court heard testimony from Richard Lee Hargett, a former corporal with the Aberdeen Police Department, as well as Greg Caudill, the former Aberdeen Police Department's chief of police.

{¶ 3} Specifically, Hargett testified that on the evening of April 22, 2013, a detective with the Kentucky State Police, Shane Barnes, contacted him regarding Glover's whereabouts. As part of their conversation, Detective Barnes told Hargett that Glover was wanted in Kentucky on charges of felony arson and may be residing in Aberdeen at a trailer park on Chestnut Street. Detective Barnes also told Hargett that Glover may be trafficking heroin in the area. After receiving a description of Glover and of Glover's truck, Hargett testified he drove to the trailer park on Chestnut Street where he saw Glover "step out the front door, a little camper, that was next to the – the identified vehicle." Hargett then contacted dispatch and requested backup from the Brown County Sheriff's Office.

{¶ 4} Once backup arrived, Hargett testified that he, Sergeant David Johnson, and Deputy Jerry Crawford approached Glover's camper and watched as Glover exited through the front door. Glover was then detained. After Glover was detained, Hargett testified Glover asked the officers to "secure his vehicle." When asked to clarify what Glover meant by this request, Hargett testified Glover "requested that we lock it up." Complying with Glover's request, Sergeant Johnson walked over to Glover's truck and opened the driver's side door. However, upon opening the door, Hargett testified Sergeant Johnson "alerted that there was

---

1. Glover was also charged with having a weapon while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony, as well as several firearm specifications. This charge, as well as the accompanying firearm specifications, were later dismissed.

something amiss with the vehicle."

{¶ 5} Hargett then testified he walked over to Glover's truck and saw a gun, a knife and a plastic bag containing a large sum of money clearly visible protruding from the driver's side door storage compartment. When asked if a search of the rest of Glover's truck was then conducted, Hargett testified, "[n]o, just in the location where the firearm was located." After removing these items from Glover's truck, Hargett testified he asked Glover if this was "the property with the money that he wished that we secured," to which Glover responded, "Yes, it was his property, that he wanted to * * * secure." According to Hargett, Glover then stated there was exactly $15,000 in $100 bills within the plastic bag, a fact the officers later confirmed. An additional $200 was later found on Glover's person. Hargett then placed the gun, knife and money into his cruiser and contacted Caudill for assistance.

{¶ 6} After speaking with Hargett, Caudill testified he went to the scene and made contact with Glover. Once there, Caudill testified he read Glover his *Miranda* rights and asked Glover if he could search his camper. According to Caudill, Glover responded by stating, "I'm already caught, I might as well go ahead and give you everything. Yes, come on in." Continuing, Caudill testified:

> Mr. Glover was very adamant about making sure he showed me where the drugs was at. He said, "I will show you where they're at." You know, "You come in with me, I'll show you exactly where they're at." You know, there was no reason for – he kept – very strongly let me know there's no reason for me to search the whole trailer. He'll show me exactly where the drugs was at. So, at that point, I asked him, "Well, show me where they're at."
>
> So we walked in together, and there was a pill bottle laying on the kitchen sink. He knocked it over. He kicked it, like hit it with his elbow and knocked it into the sink. We opened it up, and it had a brown, powdery substance in it, and I asked him what it was, and he said, "It's heroin." And, then, there was scales laying there, also, with caps.

{¶ 7} Caudill further testified that he was "absolutely" sure Glover gave him his

consent to search his camper. Hargett also testified he heard Glover give his consent to search. Nevertheless, Caudill testified that even if Glover had not given his consent to search, Glover's camper and truck would have eventually been towed, impounded and inventoried as "abandoned property." Caudill also testified that Glover told him he was "'willing to give Brown County [his] property,' his cash, his camper, his truck" because he would "'never get to use it again anyway, so it doesn't matter.' He said, 'So, I'm willing to give that stuff up, to do my time in the State of Kentucky.'"

{¶ 8} On July 16, 2014, the trial court issued its decision denying Glover's motion to suppress. In so holding, the trial court found Glover had "asked the officers to 'secure' his vehicle," thereby resulting in the discovery of "a firearm and $15,000 in hundred dollars bills in the driver side door storage compartment." The trial court also found Glover had given his consent to search his camper, a search of which led to the discovery of heroin and other drug paraphernalia. However, even if Glover had not consented to the search, the trial court determined "the contraband would have been inevitably discovered by law enforcement upon impound and proper inventories performed of the vehicles at the time of impound."

{¶ 9} On December 9, 2014, following a two-day jury trial, Glover was found guilty of both charges. After merging the two charges for purposes of sentencing, the trial court sentenced Glover to serve a total of seven years in prison and ordered him to pay a $7,500 fine. Glover was also ordered to forfeit his camper, truck, gun and $15,200 in cash. Glover now appeals from his conviction, raising two assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY DENYING APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS.

{¶ 12} In his first assignment of error, Glover argues the trial court erred by denying his motion to suppress because the state failed to establish his consent to search his camper

was freely and voluntarily given. Glover also argues the seizure of the property located in his truck that he asked the officers to "secure" was improper. We disagree.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 14} Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically established and well-delineated exceptions. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 13. One such exception occurs "when a person waives his Fourth Amendment protection by consenting to a warrantless search." *State v. Oberding*, 12th Dist. Warren No. CA2011-09-101, 2012-Ohio-3047, ¶ 13, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973); *see also State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, ¶ 16 (7th Dist.) (stating consent is a well-recognized exception to the warrant requirement).

{¶ 15} When the state attempts to justify a warrantless search on the basis of consent, "the state must demonstrate that the consent was freely and voluntarily given and not the

result of coercion, express or implied." *State v. Taylor*, 77 Ohio App.3d 223, 226 (12th Dist.1991). Whether an individual voluntarily consented to a search is a question of fact that is determined based on the totality of the circumstances. *State v. Ossege*, 12th Dist. Clermont Nos. CA2013-11-086 and CA2013-11-087, 2014-Ohio-3186, ¶ 15. "Since this inquiry requires an assessment of the credibility of the evidence, the trier of fact is in the best position to make this determination, and its decision will not be reversed on appeal unless it is clearly erroneous." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 43, citing *In re Lester*, 12th Dist. Warren No. CA2003-04-050, 2004-Ohio-1376, ¶ 18.

{¶ 16} Glover initially argues the trial court erred by finding his consent to search his camper was freely and voluntarily given because he never signed a written consent form. However, it is well-established consent may be given either orally or in writing. *State v. Hosko*, 3d Dist. Seneca No. 13-14-23, 2015-Ohio-570, ¶ 14, citing *State v. McLemore*, 197 Ohio App.3d 726, 736, 2012-Ohio-521, ¶ 24 (2d Dist.). In turn, although written consent may serve as strong evidence of a willingness to allow a search, written consent is not necessary once oral consent has been obtained. *State v. Mayberry*, 2d Dist. Montgomery No. 26025, 2014-Ohio-4706, ¶ 17; *see State v. White*, 2d Dist. Montgomery No. 23905, 2011-Ohio-503, ¶ 28 ("in the presence of a valid oral consent, there is no requirement that the police also acquire a written consent"). Therefore, because consent may be given orally without the need for additional written consent, Glover's first argument is without merit.

{¶ 17} Next, Glover alleges the trial court's decision finding he consented to the search of his camper was improper given the fact the incident report "does not indicate that any consent was obtained," whereas the accompanying investigator notes indicate he did. Glover also points to several other discrepancies regarding differing dates and times between the two documents. According to Glover, due to these inconsistencies within these two

documents, "there is no way to be certain that the document was not altered after the fact." We fail to see how the inconsistencies between these two documents impact the trial court's decision finding he gave his consent to search. Again, whether an individual voluntarily consented to a search is a question of fact that is determined based on the totality of the circumstances. This includes the uncontradicted testimony from Hargett and Caudill.

{¶ 18} Moreover, except for his bare assertions to the contrary, there is nothing in the record to support Glover's claim that the two documents were somehow altered. Rather, when asked if he thought someone had altered the documents, Hargett explicitly testified: "I don't think so, based on what I'm seeing as far as the – the primary content of the report." Hargett also testified the discrepancies could simply be the result of a typographical error. As noted above, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. Therefore, Glover's second argument is also without merit.

{¶ 19} Glover further alleges the trial court's decision finding he consented to the search of his camper was improper since it is "not clear whether [he] was aware of his right to refuse consent[.]" However, "[p]olice officers need not warn an individual of the right to refuse consent." *State v. Davis*, 1st Dist. Hamilton No. C-040818, 2005-Ohio-4139, ¶ 10. In turn, "while the subject's knowledge of a right to refuse is indeed a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *State v. Smith*, 12th Dist. Warren No. CA2012-03-022, 2012-Ohio-5962, ¶ 19, citing *State v. Robinette*, 80 Ohio St.3d 234, 243-244 (1997), and *Schneckloth*, 412 U.S. at 248-249. Therefore, Glover's third argument is likewise without merit.

{¶ 20} Finally, Glover alleges the trial court's decision finding he consented to the search of his truck was improper because his request for officers to "secure" his truck meant

only that he "wanted it locked and would not operate as a consent to a search." Yet, as noted above, that is exactly what Hargett testified occurred. Again, as Hargett explicitly stated when asked to clarify what Glover meant by "secure his vehicle," Hargett testified Glover "requested that we lock it up." This required the officers, at a minimum, to open the driver's side door so that they could press the lock button. Once the door was open – again, at Glover's request – both Hargett and Sergeant Johnson discovered a gun, a knife and a plastic bag containing a large sum of money that was clearly visible protruding from the driver's side door storage compartment. As Hargett testified, no additional search of Glover's truck was then performed. Glover later confirmed that the items located in his truck were his and that he wanted the officers to have them secured.

{¶ 21} As the record reveals, Sergeant Johnson was lawfully exercising dominion and control over Glover's property upon Glover's request to "secure" those items. Sergeant Johnson then alerted Hargett to observe the items in plain view because of their incriminating nature as evidence. It is well-established that a police officer lawfully upon property does not conduct a search merely by observing an object in plain view. *State v. Young*, 12th Dist. Warren No. CA2014-05-074, 2015-Ohio-1347, ¶ 28. Therefore, because Sergeant Johnson was honoring Glover's request to secure his truck and observed the items in plain view, no search of his truck in fact occurred.

{¶ 22} Whether items are immediately apparent as being incriminating depends upon whether the officers have probable cause to associate the items with criminal activity. *Id.* at ¶ 29. In this case, the record makes clear that the officers already knew Glover was believed by law enforcement to be selling heroin in Aberdeen and was wanted for a serious felony offense in Kentucky. The character of the property, as well as the circumstances under which the property was discovered, established probable cause to identify the items as evidence connected to criminality.

{¶ 23} In reaching this decision, we note that Hargett and Caudill's testimony at the suppression hearing seems to confuse Glover's decision to grant the officers permission to "secure" his truck with the permission to search it. Understandably, Ohio law does recognize limited consent. *See State v. Arrington*, 96 Ohio App.3d 375 (12th Dist.1994). A limited consent occurs where the one giving consent expresses that consent for a limited object for a specific or limited purpose. *Id.* However, the facts in this case reveal no request by the officers to search Glover's truck, no permission by Glover to search his truck, and no actual search of the truck, limited or otherwise. Thus, based on the facts and circumstances of this case, it is impossible to conclude that consent to perform a limited search of Glover's truck took place.

{¶ 24} Regardless, as recognized by the United States Supreme Court, "[o]fficers may seize evidence in plain view if they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made * * *." *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849 (2011), paragraph one of the syllabus. Therefore, as there was no Fourth Amendment violation established in this case, the doctrine of plain view is entirely appropriate. Accordingly, Glover's final argument is also without merit.

{¶ 25} In light of the foregoing, having found no merit to any of the various arguments raised herein, Glover's first assignment of error is overruled. In so holding, we note our decision is based solely on our finding Glover consented to the search of his camper and that the plain view doctrine applied to the items seized from Glover's truck, without providing any opinion regarding the trial court's application of the inevitable-discovery doctrine.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN UPHOLDING A CONVICTION WHERE THERE IS INSUFFICIENT PROOF OF A COMPLETE CHAIN OF CUSTODY.

{¶ 28} In his second assignment of error, Glover argues his conviction was against the

manifest weight of the evidence due to several "blatant breaks in the chain of custody" regarding the pill bottle removed from his camper. We again disagree.

{¶ 29} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 30} A chain of custody is part of the authentication and identification requirement for the admission of evidence under Evid.R. 901. *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 14, citing *State v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist.1995). However, although the state bears the burden of establishing a chain of custody, the state's duty is not absolute. *State v. Miller*, 12th Dist. Preble No. CA2002-02-004, 2002-Ohio-6109, ¶ 18. In turn, the state need not negate all possibilities of substitution, alteration or tampering. *State v. Doty*, 12th Dist. Madison No. CA85-01-001, 1985 WL 7704, *2 (Aug. 12, 1985). Rather, the state is merely required to "establish that it is reasonably certain that

substitution, alteration, or tampering did not occur." *State v. Blevins*, 36 Ohio App.3d 147, 150 (10th Dist.1987). The trier of fact has the task of determining whether a break in the chain of custody exists. *State v. Blumensaadt*, 11th Dist. Lake No. 2000-L-107, 2001 WL 1116458, *4 (Sept. 21, 2001), citing *Columbus v. Marks*, 118 Ohio App. 359 (10th Dist.1963). Yet, even then, any deficiencies or irregularities in the chain of custody generally go to the weight of the evidence, not its admissibility. *State v. Steele*, 12th Dist. Butler No. CA2003-11-276, 2005-Ohio-943, ¶ 114.

{¶ 31} At trial, both Hargett and Caudill testified the pill bottle identified and subsequently admitted as a state's exhibit was the same pill bottle recovered from Glover's camper. Specifically, Hargett testified he placed the pill bottle into an evidence bag that he then initialed and dated. Once the pill bottle was placed into the evidence bag, Hargett testified he sealed the bag, locked it in the trunk of his cruiser and transported it to the Aberdeen Police Department's evidence room. According to Hargett, once he arrived at the evidence room, he then transferred the sealed evidence bag to Sergeant Matt Nicholas, the then evidence room technician. The Aberdeen Police Department's records indicate this transfer occurred on April 22, 2013 at 11:50 p.m.

{¶ 32} Stanton Wheasler, a forensic scientist with the Bureau of Criminal Investigation (BCI), also testified regarding the disputed pill bottle. According to Wheasler, after the sealed evidence bag containing the pill bottle was received by BCI on April 25, 2013, Scott Dobranksy tested the pill bottle and resealed it within the evidence bag on May 7, 2013. However, because Dobransky had since retired from BCI, Wheasler testified he was assigned to retest the pill bottle for purposes of trial. To that end, Wheasler testified he retrieved the sealed evidence bag containing the pill bottle from BCI's secured drug vault on November 24, 2014 after it had been resubmitted to BCI for testing on November 21, 2014. As Wheasler testified, the evidence bag did not appear to be tampered with in any way.

Tests later revealed the pill bottle contained approximately 11.35 grams of heroin. After testing was complete, Wheasler resealed the pill bottle within the evidence bag, which he then initialed and dated.

{¶ 33} Sergeant Joshua Dean Miller of the Aberdeen Police Department further testified regarding the disputed pill bottle. According to Sergeant Miller, he originally retrieved the sealed evidence bag containing the pill bottle from BCI on October 18, 2013. Sergeant Miller testified that he then took the evidence bag back to the evidence room where he locked it inside. However, upon the state's request, Sergeant Miller retrieved the untouched evidence bag from the evidence room and resubmitted it to BCI for testing. When asked if there was any sign of tampering with the evidence bag at that time, Sergeant Miller testified "Not that I could tell." Sergeant Miller also testified the evidence bag "was in the exact same location that we had set it."

{¶ 34} Once testing was completed, Sergeant Miller again retrieved the sealed evidence bag from BCI and locked it back inside the evidence room. Sergeant Miller testified that from there, he brought the evidence bag "to the Prosecutor's Office and put it in the evidence receiving room." Sergeant Miller, however, also acknowledged that the Aberdeen Police Department did not have any documentation to corroborate his testimony as to what happened to the evidence bag after it was initially removed from the evidence room and mailed to BCI on April 23, 2013 at 8:00 a.m. Nevertheless, Sergeant Miller testified this lack of documentation was nothing more than an oversight on his part and that of the former evidence room technician, Sergeant Nicholas.

{¶ 35} As noted above, Glover argues his conviction was against the manifest weight of the evidence due to a break in the chain of custody. However, although there may be some breaks in the chain of custody with respect to documentation from the Aberdeen Police Department, the state presented extensive detailed testimony from several witnesses that

traced the chain of custody from Glover's camper to the evidence room prior to being submitted to BCI for testing on two separate occasions. None of these witnesses testified that the evidence bag was tampered with in any way. In fact, when specifically asked if the evidence bag looked like it had ever been tampered with, Hargett testified "No."

{¶ 36} Moreover, because deficiencies or irregularities in the chain of custody generally go to the weight of the evidence, not its admissibility, it was for the jury to determine the weight to be given to the pill bottle. *See, e.g., State v. Corder*, 4th Dist. Washington No. 10CA42, 2012-Ohio-1995, ¶ 25 (finding conviction for aggravated trafficking offense was not against the manifest weight of the evidence resulting from a challenge to the chain of custody where the state presented evidence that a pill presented as evidence was the same pill appellant provided to a confidential informant that was then transported to the sheriff's office and to BCI for testing); *see also State v. Banks*, 5th Dist. Fairfield No. 10-CA-36, 2011-Ohio-3801, ¶ 189 (finding conviction for trafficking offense was not against the manifest weight of the evidence where the record did not "affirmatively demonstrate any substitution, altercation or tampering of the evidence").

{¶ 37} Based on the jury's guilt finding, the jury clearly found the disputed pill bottle located in Glover's camper contained heroin as testified to at trial. It is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, as the trier of fact, the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial. *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 47. In so holding, we note Hargett and Caudill both testified at trial that Glover admitted the pill bottle found in his camper contained heroin. Therefore, because there is no indication the jury lost its way in determining the credibility and weight of the evidence as it

relates to the chain of custody regarding the disputed pill bottle, Glover's second assignment of error is without merit and overruled.

**{¶ 38}** Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.