[Cite as *State v. Montgomery*, 2015-Ohio-4652.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : CASE NO. CA2015-03-028

: O P I N I O N
  - vs - 11/9/2015

:

WILLIAM H. MONTGOMERY, :

    Defendant-Appellant. :

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2014 CRB 05567

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, William Montgomery, appeals from his assault conviction in the Clermont County Municipal Court. For the reasons stated below, we reverse Montgomery's conviction.

{¶ 2} In November 2014, a complaint was filed alleging Montgomery had assaulted Samuel Seal. The complaint stemmed from a fight that occurred between Montgomery and

Seal at Montgomery's home. A bench trial was held where Montgomery asserted he acted in self-defense. The state's witnesses, Seal and his wife, Casey Seal, testified that Seal went to Montgomery's home looking for Casey, a recovering heroin addict. According to the state's version of events, Seal believed Casey was going to Montgomery's house to buy drugs. Once Seal got to the house, he knocked on the door, the door opened, and he went into the home. Immediately upon Seal entering the home, Montgomery began punching Seal, body slammed him into the ground, and called out for his gun so he could shoot him. When the fighting ceased, Seal left the residence. Denzel Anspach, a man who works for Montgomery, tackled Seal, held his head down in the snow, and told him he would let him up if he promised to leave.

{¶ 3} In contrast, defense witnesses, Montgomery and his wife, testified that Casey is in an abusive relationship with Seal and she went to Montgomery's house that morning because Seal had hurt her. They explained that Seal broke through the locked door of the house and angrily entered, shaking his fists. Montgomery stated that he asked Seal to leave and pointed to the front door. Seal grabbed Montgomery's arm and shoved it down and the two men began to fight. During the fight, Anspach came to help Montgomery and grabbed Seal, drug him outside, and told Seal he would let him up if he promised to leave. Montgomery and his wife denied that Casey was looking for drugs and explained that Montgomery's wife is a former employee at the Clermont Recovery Center and has helped Casey over the years with her drug addiction.

{¶ 4} After the conclusion of the evidence, the trial court rejected Montgomery's claim of self-defense and found him guilty of assault. The court noted that the two sides presented conflicting evidence regarding many issues, but ultimately found Montgomery's self-defense claim must fail because he used excessive force. The court stated, "[a]t the point there is excessive force used there is no valid self-defense. When unnecessary force is used there's

no valid self-defense." Montgomery was sentenced to 180 days in jail with 170 days suspended.

{¶ 5} Montgomery now appeals, asserting two assignments of error for review. As they are related, we will discuss Montgomery's assignments of error together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED IN APPLYING AN "EXCESSIVE FORCE" STANDARD IN FINDING APPELLANT GUILTY.

{¶ 10} Montgomery challenges his assault conviction and argues the trial court should have found him not guilty because he acted in self-defense. Montgomery presents two arguments (1) his assault conviction is against the manifest weight of the evidence and (2) the court erroneously applied an "excessive force" standard in determining whether he acted in self-defense. We begin by discussing whether the court used the appropriate self-defense legal standard.

## Self-Defense Law

{¶ 11} Montgomery maintains that the self-defense statute codifying the castle doctrine, R.C. 2901.05(B), allows individuals to use any type of defensive force whatsoever against those unlawfully intruding into the individual's residence or vehicle. Consequently, Montgomery argues the trial court erred in reasoning his self-defense claim failed because he used excessive force.

{¶ 12} Montgomery's argument involves interpreting R.C. 2901.05. The interpretation

of a statute is a matter of law. *State v. Mullin*, 12th Dist. Clermont No. CA2012-06-043, 2014-Ohio-764, ¶ 15. "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent in enacting the statute." *Id.* at ¶ 13, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. A court must look to the plain language of the statute to determine the intent. *Id.* "When the statute's meaning is unambiguous and definite, we apply the statute as written and no further interpretation is necessary." *Id.*

{¶ 13} Self-defense is an affirmative defense and the defendant bears the burden of both going forward with the evidence and proving the elements by a preponderance of the evidence. R.C. 2901.05(A). However, under the castle doctrine, a defendant does not have the burden to prove the elements of self-defense when he acts against a person unlawfully entering his home. Specifically, R.C. 2901.05(B)(1) provides:

> * * * a person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

The presumption does not apply if the victim had a right to be in or is a lawful resident of the residence or vehicle, or if the person who uses the defensive force was unlawfully and without privilege to be in the residence or vehicle. R.C. 2901.05(B)(2)(a) and (b). The presumption is rebuttable by a preponderance of the evidence. R.C. 2901.05(B)(3)(a).

{¶ 14} We disagree with Montgomery's interpretation of R.C. 2901.05(B)(1) as providing that an individual can use any type of force against another intruding into his home without consideration of the reasonableness of the force or the threat imposed. The statute does state that an individual is presumed to have acted in self-defense when using force "intended or likely to cause death or great bodily harm to another." R.C. 2901.05(B)(1). We

interpret this provision as providing that a defendant's use of force will always initially be presumed reasonable. However, we do not interpret this provision as providing that a defendant may use deadly force in every situation against an intruder. Instead, as discussed below, the state may rebut this presumption by showing the defendant's use of force was not necessary or reasonable under the circumstances. *See State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, ¶ 57 (R.C. 2901.05(B) not license to kill; instead provides amount of defensive force presumptively reasonable).

{¶ 15} While R.C. 2901.05(B)(3)(a) provides that the self-defense presumption is rebuttable by a preponderance of the evidence, it does not specify the means by which the state may rebut the presumption. We interpret the statute to permit the state to rebut the presumption by establishing by a preponderance of the evidence the elements of a self-defense claim were not met. *See State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239, ¶ 9; *Bundy* at ¶ 49-50; *State v. Hadley*, 3d Dist. Marion No. 9-11-30, 2013-Ohio-1942, ¶ 62. The elements of self-defense are (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid danger. *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 16} There is no duty to retreat in one's own home, and therefore, in the present case, the state could not rebut the presumption by establishing this evidence. R.C. 2901.09(B); *State v. Thomas*, 77 Ohio St.3d 323, 327 (1997). The second element of self-defense involves determining whether the defendant's use of force was "reasonably necessary to repel the attack" or in other words, whether the defendant used excessive force. *State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 30.

{¶ 17} Because the assault occurred in Montgomery's home, the state could rebut the self-defense presumption by proving that Montgomery's use of force was not reasonably necessary to repel the attack. Consequently, the trial court did not misinterpret the law in reasoning that Montgomery's self-defense claim could not succeed because he used "excessive force" against Seal. Having concluded that Montgomery used excessive force, the trial court essentially found that the state successfully rebutted the presumption of self-defense. Therefore, the trial court did not apply an incorrect legal standard in concluding that Montgomery's use of excessive force prohibited his self-defense claim. However, as discussed below, we find the trial court's factual findings are against the manifest weight of the evidence.

**Manifest Weight**

{¶ 18} Montgomery argues his assault conviction is against the manifest weight because the state's evidence was not credible. A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Glover*, 12th Dist. Brown No. CA2015-01-002, 2015-Ohio-3707, ¶ 29. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *Glover* at ¶ 29. An appellate court, therefore, will overturn a conviction due to the manifest weight of

the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins* at 387, citing *Martin* at 175.

{¶ 19} Montgomery was convicted of assault in violation of R.C. 2903.13(A), which provides, "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Whoever violates this section is guilty of a first-degree misdemeanor. R.C. 2903.13(C)(1). As stated above, there is a presumption of self-defense when an accused uses defensive force that is intended or likely to cause death or great bodily harm against a person who is in the process of unlawfully and without privilege entering a residence occupied by the accused. R.C. 2901.05(B)(1). The state may rebut this presumption by proving by a preponderance of the evidence that (1) the accused was at fault in creating the violent situation, or (2) the accused did not have a bona fide belief that he was in imminent danger of death or great bodily harm or that his only means of escape was the force used.

{¶ 20} In the present case, Montgomery was presumed to have acted in self-defense against Seal because Seal entered into his home unlawfully and without privilege. After careful examination of the record, we find the state failed to rebut the presumption of self-defense afforded to Montgomery because the testimony of the state's witnesses, Seal and Casey, was so impractical and illogical that it rendered their testimony not credible. For instance, Seal and Casey explained that Seal entered into the home because the door "swung open" after he knocked on the door. Seal stated that he knocked on the door in a normal manner and the door "swung all the way open" and he believed "somebody had answered the door." Casey testified similarly and hypothesized that the door completely opened because it was not latched.

{¶ 21} Additionally, Seal and Casey stated that once Seal walked into the home, Montgomery jumped up and immediately started attacking him. The couple testified that the assault was extensive; Montgomery slammed Seal into the ground, got on top of him, choked

him, punched him in the face, and called out for his wife to get his gun so he could shoot Seal in the head. Casey and Seal offered no explanation as to why Montgomery would suddenly, without provocation, severely assault Seal. According to Seal's and Casey's testimony at trial, Seal had been to Montgomery's property before and on that morning, calmly walked into the home and asked for his wife. Seal also testified that he was unable to fight off Montgomery even though he was several years younger and larger than him.

{¶ 22} Lastly, the state's evidence regarding Anspach's involvement was also illogical. Casey stated that after the altercation ended and the couple was outside the home and leaving the property, Anspach attacked Seal from behind, held his head down in the snow, and asked Seal, "If I let you up, Sam, are you just going to leave?" It is illogical that Anspach would tackle Seal once he had already left the home in order to make Seal promise that he would leave. Montgomery's version of the same incident was that Anspach pulled Seal off him during the fight and ejected him from the home. Anspach had Seal by the shirt collar and told him he would only let him go if he got off the property.

{¶ 23} In finding the state's witnesses not credible, we recognize that it is the primary responsibility of the trier of fact to decide issues of witness credibility and the weight given to the evidence. However, in this case, the trial court largely avoided making credibility determinations as it did not determine which side was more credible regarding Seal's right to be in the home, how the door opened, if Seal was told to leave, and the first aggressor in the fight. To the extent the trial court's decision found the state's witnesses credible, we find this to be in error. Viewing the testimony of the state's witnesses regarding these three incidents, we find collectively they reveal the state's rebuttal evidence was based on impractical and illogical testimony. Consequently, the state failed to rebut the self-defense presumption afforded to Montgomery. Therefore, Montgomery was presumed to have acted in self-defense and Montgomery's assault conviction is against the manifest weight of the evidence.

**Conclusion**

**{¶ 24}** Montgomery's second assignment of error is overruled. The trial court did not apply an incorrect legal standard in considering whether Montgomery used excessive force during the assault to preclude Montgomery's self-defense claim under R.C. 2901.05(B)(1). When a defendant is presumed to have acted in self-defense pursuant to R.C. 2901.05(B)(1), the state may rebut the self-defense presumption by establishing by a preponderance of the evidence the elements of a self-defense claim have not been met.

**{¶ 25}** Montgomery's first assignment of error is sustained. Montgomery's assault conviction is against the manifest weight of the evidence because the state failed to present credible evidence at trial to rebut the presumption of self-defense afforded to Montgomery. Montgomery's conviction is reversed and vacated.

**{¶ 26}** Judgment reversed, Montgomery's conviction is vacated, and Montgomery is hereby discharged.

S. POWELL, P.J., and HENDRICKSON, J., concur.