[Cite as *State v. Doss*, 2015-Ohio-5504.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                   :               CASE NO.  CA2015-03-023

                                                  :                    O P I N I O N
    - vs -                                                              12/30/2015

                                                  :

DAKOTA MICHAEL DOSS,               :

    Defendant-Appellant.            :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CR 0371

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Michael A. Kennedy, 70 North Riverside Drive, Batavia, Ohio 45103, for defendant-appellant

**PIPER, P.J.**

{¶ 1}   Defendant-appellant, Dakota Doss, appeals from his bench trial conviction in the Clermont County Court of Common Pleas on two counts of child endangering.  For the reasons outlined below, we affirm.

{¶ 2}   Doss was indicted by a Clermont County Grand Jury on multiple counts of endangering children.  The charges stemmed from allegations that Doss had abused his girlfriend's eight-month-old daughter, C.P., who he was babysitting.  At the bench trial, the

trial court heard extensive testimony from both the state and the defense.

{¶ 3} Between June 1, 2013 and June 2, 2013, C.P. was in the care of several family members. During that time, C.P. had her diaper changed and received a bath. No one noticed any bites, bruises, or evidence of physical harm on her body.

{¶ 4} At approximately 2:00 pm on June 2, 2013, C.P.'s mother dropped C.P. off at Doss's home so that he could babysit while she went to work. C.P.'s mother testified that C.P. did not have any injuries on her body when she left the child with Doss. Testimony also established C.P. had no medical problems in her life, with the exception of one fever. At one point during the night, Doss sent C.P.'s mother a video of C.P. on the porch, appearing happy and healthy.

{¶ 5} According to statements made by Doss, he put C.P. to bed around 7:30 pm, but she began "bitching" at around 9:30 pm, so he prepared a bottle and began to feed her. While he was feeding her, Doss stated that C.P. began gagging, so he attempted to burp her by hitting her on the back. When that effort proved unsuccessful, Doss explained that he picked C.P. up, shook her, and said "[C.P.] are you all right?" Doss then stated that he "freaked out" and ran with C.P. into the bedroom and accidentally hit C.P.'s head on a column. In a subsequent interview, Doss stated that he tripped over some furniture and dropped C.P. As a result of C.P.'s condition, Doss explained that he first called C.P.'s mother to see what he should do; Doss only informed her that C.P. was choking. When C.P.'s condition did not improve, Doss called 9-1-1.

{¶ 6} According to the 9-1-1 records, Doss informed the dispatcher that C.P. was choking, but failed to mention that he had been striking her on the back, had hit her head on the column, or had dropped her. When emergency personnel arrived, they found no indications of choking and found no food residue in C.P.'s mouth. Based on the severity of her symptoms, C.P. was intubated and later transported via air care to Cincinnati Children's

Hospital where she was placed in the intensive care unit.

{¶ 7} While at Cincinnati Children's Hospital, C.P. was assessed by a multidisciplinary team of physicians and health professionals during which it was discovered that C.P. had bruising on her buttocks, a human bite mark on her leg, edema of the brain, and diffuse bilateral retinal hemorrhages, consistent with a child suffering from abusive head trauma.[1] In addition, CT scans of C.P.'s brain revealed subdural collections of blood, which were becoming progressively worse. Later scans revealed the presence of large portions of old blood on the brain and the continued presence of new blood, which Dr. Kathi Makaroff, a pediatrician at Cincinnati Children's Hospital, testified is consistent with injuries suffered from severe trauma.

{¶ 8} Dr. Kline-Fath, the pediatric radiologist who reviewed those scans, stated that the injuries to C.P.'s brain were consistent with nonaccidental trauma. This diagnosis was corroborated by Dr. Makoroff who testified that C.P. suffered abusive head trauma, and those injuries were not consistent with a contact injury like a simple household fall.

{¶ 9} Following the presentation of evidence, the trial court found Doss guilty on two counts of endangering children in violation of R.C. 2919.22(A), a third-degree felony, and R.C. 2919.22(B)(1), a second-degree felony. The trial court merged the charges for sentencing purposes and the state elected to proceed on the second-degree felony charge. The trial court then sentenced Doss to a three-year prison term. Doss now appeals from his conviction, raising two assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY FINDING THE APPELLANT GUILTY OF ALL

---

1. Testimony at trial explained that the terms "shaken baby syndrome" and "abusive head trauma" are synonymous and essentially describe conditions related to injury of the brain. We chose to use the term "abusive head trauma" in this opinion.

CHARGES.

{¶ 12} In his first assignment of error, Doss argues that his conviction is against the manifest weight of the evidence. We find Doss's argument to be without merit.

{¶ 13} "A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 34. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Montgomery*, 12th Dist. Clermont No. CA2015-03-028, 2015-Ohio-4652, ¶ 18. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Eaton*, 12th Dist. Clermont No. CA2014-03-026, 2014-Ohio-5746, ¶ 10.

{¶ 14} It is well-established that both circumstantial and direct evidence have the same probative value. *State v. Estes*, 12th Dist. Warren No. CA2013-12-126, 2014-Ohio-3295, ¶ 17. In fact, in some instances, certain facts can be established only by circumstantial evidence. *State v. Haley*, 12th Dist. Butler No. CA2012-10-211, 2013-Ohio-4123, ¶ 8. Appellate courts in this state have upheld convictions obtained through the use of expert testimony regarding abusive head trauma. *State v. Milby*, 12th Dist. Warren No. CA2013-02-014, 2013-Ohio-4331, ¶ 39. In fact, "'it is not unusual" that such evidence may be primarily circumstantial, "'especially where a child is in the sole custody of one adult at the time the injuries are sustained.'" *Id.*, quoting *State v. Woodson*, 8th Dist. Cuyahoga No. 85727, 2005-Ohio-5691, ¶ 53; *State v. Brooks*, 10th Dist. Franklin No. 00AP-1440, 2001 WL 1117464, *7

- 4 -

(Sept. 25, 2001).

{¶ 15} As noted above, Doss was convicted of child endangering under R.C. 2919.22(B)(1), which provides, in pertinent part: "[n]o person shall do any of the following to a child under eighteen years of age * * *: [a]buse the child[.]"

{¶ 16} In arguing his conviction should be reversed, Doss contends that the state failed to prove how C.P.'s injuries were caused, especially with respect to whether the injuries could have been caused by shaking alone. Doss also claims the state's expert witnesses provided inconsistent accounts of the injuries and their testimonies do not "fit with the [s]tate's version of the facts." Doss further argues the state failed to rebut evidence presented by his own expert witness.[2]

{¶ 17} However, our review of the record reveals no such conflict in the state's evidence. As noted above, the state presented both direct and circumstantial evidence to support a finding that C.P. had received nonaccidental trauma while in Doss's care that resulted in various injuries. *State v. Crockett*, 10th Dist. Franklin Nos. 14AP-242 and 14AP-248, 2015-Ohio-2351, ¶ 38, citing *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991) ("Under Ohio law * * * circumstantial evidence can have the same probative value as direct evidence, and [a] conviction can be sustained based on circumstantial evidence alone").

{¶ 18} Moreover, although Doss emphasizes portions of the state's expert testimony to argue that the state's evidence was "inconsistent," especially with respect to whether shaking the baby could be the "causal mechanism" for the injuries suffered by C.P., we fail to see any deficiency in the testimony. For example, while the state's experts did not opine on the precise mechanism of harm used to cause C.P.'s injuries, i.e., whether the brain injury was

---

2. While Doss's expert did opine differently than the state's expert, we note the testimony Doss relies on in advancing his position does not support a finding that Doss's conviction was against the weight of the evidence. The state's expert testimony relating to the cause of the related injuries, or "biomechanical testimony" was contrary to, and different from, the testimony offered by Doss's expert. Contrary to Doss's argument, the state was not required to recall their expert, or offer additional testimony, following the testimony of Doss's expert.

caused by shaking, hitting, or throwing C.P., the experts testified extensively about the injuries sustained by C.P. and the type of force necessary to cause those injuries. As stated by Dr. Makaroff:

> You know, I don't know exactly what happened, but certainly the only way -- the only way to injure this baby is not just picking up by the trunk or picking up by the arms and shaking the baby violently. It could certainly be picking the baby up and violently throwing that child onto a couch, or onto a bed, or onto the floor * * * or onto a chair. I mean, we could go on, and on, and on how this child could be injured. I don't know. I wasn't there.

{¶ 19} Simply stated, the testimony presented at trial does not support Doss's argument on appeal. The state's witnesses provided direct and circumstantial evidence to support the conclusion that C.P.'s injuries were the result of nonaccidental injury, which demonstrated abuse. The medical witnesses who testified at trial stated that C.P.'s injuries were nonaccidental, indicative of abusive head trauma, and not caused by a "routine fall." The testimony of prior caregivers supported a finding that C.P. was happy, healthy, and uninjured prior to being left in the care of Doss. Furthermore, the lack of adequate explanations for documented injuries, along with Doss's own admissions and lack of candor with the investigating officers are also matters the trial court could have considered in determining the weight and credibility of the evidence.

{¶ 20} Although Doss offered his own expert to testify that the injuries suffered by C.P. could have been a result of accidental contact or another medical emergency, the trial court, in its role as a trier of fact, may choose to believe or disbelieve any witness, including an expert witness. *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, ¶ 71 ("A trial court is not required to automatically accept expert opinions offered from the witness stand * * * on any * * * subject"). In light of the foregoing, and after carefully reviewing the record in this case, we find the trial court's decision was supported by the manifest weight of the evidence. Doss's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S MOTION FOR DISMISSAL AT THE CLOSE OF THE STATE'S CASE.

{¶ 23} In his second assignment of error, Doss argues the trial court erred by denying his Crim. R. 29(C) motion for acquittal. In so doing, Doss first renews the argument raised in his first assignment of error related to alleged contradictions and inconsistencies amongst the state's medical witnesses. However, as stated above, the state presented both direct and circumstantial evidence that Doss abused C.P. and his conviction for endangering children was supported by the weight of the evidence. This court has previously acknowledged, a "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Dinka*, Warren No. CA2014-01-002, 2015-Ohio-63, ¶ 12. Accordingly, Doss's argument lacks merit.

{¶ 24} Next, Doss claims the expert testimony from the state's medical witnesses fails to meet the requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), a case involving the use of the expert testimony under Rule 702 of the Federal Rules of Evidence. However, while the testimony presented at trial did address some of the disagreement amongst experts in the field with respect to abusive head trauma, this court has previously acknowledged that abusive head trauma remains an accepted theory in this state and others. *Milby*, 2013-Ohio-4331 at ¶ 27; *State v. Stein*, 5th Dist. Richland No. 13CA51, 2014-Ohio-222, ¶ 31.

{¶ 25} For instance, in *Milby*, this court found that a trial court did not err by refusing to hold a *Daubert* hearing because the knowledge involving abusive head trauma has "long been recognized as the proper subject of expert testimony" and "the testimony is not novel." *Id.* at ¶ 28. In so doing, we cited similar cases rejecting arguments relating to the reliability of the evidence under *Daubert*:

> [Appellant] claims that, even if we previously accepted the evidence [of abusive head trauma], it is no longer reliable under *Daubert [v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993)]* because it has been discredited by other scientific evidence. This is an exaggeration. The most the record before us shows is that experts disagree on the diagnosis of [abusive head trauma] particularly where there is no evidence of some impact injury. This disagreement is vigorous. However, neither the testimony at trial nor the references [appellant] cites support a conclusion that the theory of abusive head trauma * * * has been discredited. Expert testimony is not rendered unreliable by criticism. *Harris v. State*, 2004 OK CR 1, ¶ 31 n.10, 84 P.3d 731, 746 n.10. [Appellant's] jury determined the weight and credibility to give to each witness. *Warner [v. State ]*, 2006 OK CR 40, ¶ 40, 144 P.3d at 863. Jurors had the benefit of hearing "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798.

*Id.* at ¶ 28, citing *Day v. State*, 2013 OK CR 8, 303 P.3d 291, ¶ 8.

**{¶ 26}** The evidence introduced by the state's medical witnesses related to abusive head trauma and was properly admitted as evidence in Doss's trial for endangering children. As the evidence introduced by the state was properly before the court and Doss's conviction was supported by the manifest weight of the evidence, we likewise find the trial court did not err in denying his Crim. R. 29(C) motion for acquittal. Therefore, we find Doss's second assignment of error is without merit.

**{¶ 27}** Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.