**The STATE of Ohio, Appellant,**

v.

**ARRINGTON, Appellee.**

[Cite as *State v. Arrington* (1994), 96 Ohio App.3d 375.]

Court of Appeals of Ohio,
Clinton County.

No. CA94–04–010.

Decided Aug. 8, 1994.

*William E. Peele,* Clinton County Prosecuting Attorney, and *David R. Caudill, Jr.,* for appellant.

*Joseph H. Dennis,* for appellee.

WILLIAM W. YOUNG, Judge.

Appellant, the state of Ohio, appeals the decision of the Clinton County Court of Common Pleas to suppress evidence consisting of "crack" cocaine found in the purse of defendant-appellee, Dereasa Arrington.

On July 21, 1993, trooper Rick Blyberg, a member of the Ohio State Highway Patrol's Drug Interdiction Team, stopped Arrington for speeding on State Route 68 North. The trooper approached the car from the passenger side to ask Arrington for identification. She produced a valid Ohio driver's license. To avoid traffic, trooper Blyberg asked Arrington to pull into a nearby driveway and she complied.

The trooper again approached Arrington's car, this time from the driver's side. When he reached the driver's window, the trooper noticed a "police-type" baton partially underneath the front passenger seat. The trooper testified that he thought the baton "could be construed, and was construed at that time for me, as a deadly weapon." The trooper later acknowledged that he did not think such a baton was illegal to own or possess.

After seeing the baton, the trooper ordered Arrington out of the car and asked her whether she had any other weapons. Arrington responded that she had no other weapons and allegedly invited the officer to look for himself. Trooper Blyberg "frisked" the car and found no other weapons.

The officer noticed a "medium size" purse on the front passenger seat and asked Arrington if it contained any weapons. She responded no and allegedly told the officer that he could go ahead and look for weapons in the purse.

Trooper Blyberg testified that he opened the purse, looked inside and found several small crystals and a razor blade in a plastic baggie. The trooper recognized the crystals to be "crack" cocaine. When the prosecutor asked where this baggie was located in the purse, the trooper responded: "They were in a—in

the compartment inside the purse; I mean, it was—they were visible from looking in the purse." The officer explained further: "I had opened it to look inside it, as I was moving the papers and things she had in—cigarette pack—inside, that's when I observed the Baggie."

Although Trooper Blyberg said that the evidence was "visible from looking in the purse," this testimony is undermined by his affidavit in support of his complaint dated July 21, 1993, the date of the search. In this affidavit, the officer states: "In her purse was a cigarette case which contained a plastic baggie of approx. 1½ gms Crack Cocaine."

The trial court, after hearing the evidence, granted Arrington's motion to suppress the evidence found in her purse. The state now appeals, assigning the following as error:

"The trial court erred in suppressing the evidence seized by Trooper Blyberg during the search, since the defendant consented to the search and the evidence was in plain view."

▮ The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches. When an officer conducts a warrantless search, the state bears the burden of establishing the validity of the search. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576. For example, where an officer claims that he had consent to conduct a search, the state must demonstrate that the consent was freely and voluntarily given and not the result of coercion. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875.

▮ The scope of a consent search is limited by the terms of its authorization and is generally defined by the expressed object of the search. *Florida v. Jimeno* (1991), 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 302. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* Just as the burden is on the state to demonstrate that a suspect voluntarily consented to a search, the burden must also be on the state to show that a consent search was performed within the scope of that consent.

▮ The trial court was lax in describing the exact basis for its decision to suppress the evidence in this case. The court noted in its judgment entry that the initial search of the car turned up no weapons and that the baton was not illegal. The court also noted there was no testimony concerning whether the trooper had any reason to believe that Arrington's purse contained a weapon or contraband. However, the trial court did not state whether it had determined that Arrington voluntarily consented to the search. Nevertheless, after a thor-

ough review of the record, we agree with the trial court that Trooper Blyberg's search of Arrington's purse was unreasonable.

We assume that Trooper Blyberg reasonably suspected that the baton was a deadly weapon and that he was justified to ask for Arrington's consent to look for additional weapons. We also assume that Arrington's consent was voluntary and knowing absent testimony to the contrary. However, the trooper's own testimony, at the hearing and through his affidavit in support of his complaint, clearly indicates that his search exceeded the scope of Arrington's consent.

According to the trooper, he asked Arrington if she had any weapons in her purse. She allegedly said no and told the trooper that he could look for himself. A reasonable person would understand the scope of Arrington's consent under these circumstances to be limited to a search for weapons. See *Jimeno, supra,* 500 U.S. at 249–252, 111 S.Ct. at 1803–1804, 114 L.Ed.2d at 301–304.

The state argues that the evidence was in "plain view" after Trooper Blyberg opened the purse. However, the trooper stated in his affidavit, taken the day of the search, that he discovered the crack in a cigarette container. Thus, the evidence clearly indicates that the evidence was not in plain view as the trooper opened the purse.

We do not believe that the trooper was reasonably searching for weapons in a cigarette container. The only reasonable explanation for such a detailed search is that the trooper was looking for drugs. The state came forward with no evidence that Trooper Blyberg had any reasonable basis to suspect that Arrington possessed such contraband. We conclude that the trial court did not err in granting Arrington's motion to suppress the evidence found in her purse. The state's single assignment of error is overruled.

*Judgment affirmed.*

FRED E. JONES, P.J., and WALSH, J., concur.