OPINION
Testimony at the suppression hearing held on June 22, 1998 revealed the following: On October 30, 1997, Deputy Ron Axt of the Butler County Sheriff's Department was on I-75 southbound at mile post 22. Axt ran the registration of a vehicle he was following and determined that the vehicle's registered owner had an expired drivers license.
Upon stopping the vehicle, Axt noted that the front license plate was not affixed to the front of the vehicle but was in the back seat. The vehicle was occupied by three women and one child. Axt observed clothes bags in the front seat passenger area and four large "saddle bag typed style purses which appeared to be empty." The front seat passenger, Charlene Wade, advised Axt that the vehicle belonged to her sister, but that she had been using it, with permission, as her own vehicle for several months while her sister was in Texas. Axt asked the driver, appellant, to exit the vehicle. Axt then asked appellant if her license was valid and also asked her for their destination. Appellant told Axt that they were going to Tri-County Mall and then to Dave and Busters, an arcade/restaurant. Axt testified that appellant appeared nervous.
Axt asked appellant to sit in his cruiser while he ran her, license and registration. He did a visual inspection, but did not pat appellant down for weapons. Axt asked appellant if she had ever been arrested and she replied affirmatively. Axt then returned to the vehicle and asked Wade and the other adult passenger to provide identification. Wade also presented Axt with insurance documentation for the vehicle; however, Axt advised her that it was not necessary. Wade told Axt that they were going to Ken wood Mall. Axt asked Wade if they were going anywhere else and she replied no. Axt noted that this conflicted with what appellant had told him. Wade and the other passenger also advised Axt that they had been arrested. A criminal records search revealed that all three of the adult occupants of the vehicle had theft records.
Axt testified that he had suspected criminal activity. Axt had five years experience with the sheriff's office, had previously worked as a police officer for the city of Fairfield, and had worked four years in retail security for the Parisian and Lazarus department stores. Axt was familiar with the methods used by shop lifters and testified that the four large saddle bags which he observed were of a type often used by shoplifters.
Axt issued a warning for the front license plate, advised appellant that the traffic stop was completed, and then asked appellant if he could ask her a couple of questions. Appellant agreed -- Axt asked appellant if she had any weapons in the vehicle and she said no. Axt then asked appellant if he could have consent to search and she said "she didn't mind." Axt acknowledged that he told appellant that Wade had consented to the search and that he viewed Wade as the possible owner of the vehicle because she had been in possession of it for several months. Axt stated that he then approached Wade and asked for and obtained her consent to search. Wade denied giving consent.
During the search, the occupants exited the vehicle; however, Wade repeatedly asked Axt why he thought there were possible weapons in the vehicle. During his search of the vehicle's interior, Axt found several large plastic bags rolled up underneath the passenger seat of the vehicle. One of the empty saddlebag purses contained new earrings with no receipt. Axt also found new ear rings in the center console. Axt then proceeded to search the trunk, although he acknowledged that Wade denied him consent to search the trunk. In the trunk, Axt found several shopping bags full of merchandise, one of the bags contained clothing on hangers with security tags still affixed. Axt seized this merchandise and read appellant her rights, although he did not then arrest her. Axt later determined that the merchandise was indeed stolen and filed a warrant for appellant's arrest.
After hearing the testimony and arguments, the trial judge orally announced that the motion to suppress would be denied. The trial judge found that appellant did not have standing to contest the search, and that, in any event, the search had been conducted with consent. Although the trial judge did not specifically find that the search was also justified based on probable cause to search, he did state that the saddlebags were in plain view, that the officer knew that such bags were commonly used in shoplifting, and that the vehicle's occupants had prior theft convictions. The trial court overruled appellant's motion to suppress and she later pleaded no contest to a charge of receiving stolen property.
Appellant has raised two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BY RULING THAT SHE HAD NO STANDING TO OBJECT TO THE SEARCH.
Assignment of Error No. 2:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DETERMINING THAT THE VEHICLE SEARCH WAS JUSTI FIED.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169,171; State v. Havens (Apr. 1, 1996), Fayette Co. App. No. 95-07-017, unreported. The trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. State v. Fanning (1982),1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson
(1995), 100 Ohio App.3d 688, 691.
Appellant's assignments of error address the trial court's determinations on her standing to contest the search; the validity of any alleged consent to the search; and finally, the existence of probable cause to search. Because we find that probable cause for the search was established, the consent determination is not dispositive. We first find that appellant had standing to consent the search.
Fourth Amendment rights are "personal rights which * * * may not be vicariously asserted." Rakas v. Illinois (1978),439 U.S. 128, 133, 99 S.Ct. 421, 435. In Rakas, the United States Supreme Court eliminated the doctrine of "automatic standing" and held that issues involving the exclusionary rule should be analyzed by focusing on the extent of a particular defendant's rights under the Fourth Amendment, "rather than on the theoretically separate, but invariably intertwined, concept of standing." Id. at 139,99 S.Ct. at 428. The Court specifically held that passengers in an automobile did not have valid claims for the exclusion of evidence, where they asserted "neither a property nor a possessory interest in the automobile, nor an interest in the property seized." Id. at 149, 99 S.Ct. at 433. The Court stressed that bright line rules were not applicable and that the focus on the defendant's legitimate expectation of privacy meant that "distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." Id. at 138, 99 S.Ct. at 430.
In State v. Carter (1994), 69 Ohio St.3d 57, the Ohio Supreme Court reviewed the relevant precedents, including Rakas, on standing to contest automobile searches. The court stated that, "the driver of an automobile who demonstrates that he has the owner's permission to use the vehicle has a reasonable expectation of privacy in the vehicle and standing to challenge its stop and search." Id. at 63, citing United States v. Rubio-Rivera (C.A.10, 1990), 917 F.2d 1271, 1274. In Rubio-Rivera, the Tenth Circuit Court of Appeals had analyzed several prior cases as follows:
 The standing inquiry focuses on reasonable expectations, hence, a defendant is not required 'to produce legal documentation showing a chain of lawful custody from the registered owner' to himself. [Citation omitted.] [A defendant] "must at least state that he gained possession from the owner or someone with the authority to grant possession." Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.
Id. at 1275 (citations omitted) (emphasis supplied).
In State v. Painter (Apr. 11, 1994), Clinton App. No. 93-07- 022, unreported, this court held that Painter, who was driving, could contest the search of a vehicle that belonged to Triplett, a co-defendant. Triplett was a passenger in the vehicle at the time of the stop. Although title had not been transferred to Triplett, the evidence showed that Triplett had a copy of the title in her purse at the time of the arrest and the vehicle had never been reported stolen. We held that this was sufficient to establish Triplett's "partial ownership interest in the vehicle for purposes of Fourth Amendment analysis." Id. at 4. Therefore, Painter had that owner's permission to exercise control over the vehicle and thus had a reasonable expectation of privacy in the vehicle and standing to challenge its stop and search. Id. (citing Carter andRubio-Rivera).
Here, the evidence showed that Wade stated that the vehicle was hers, although still titled in her sister's name. Axt testified that Wade presented proof of insurance for the vehicle. There was no evidence that anyone disputed Wade's right to possession of the vehicle despite her lack of record title. Axt acknowledged that he viewed Wade as an owner of the vehicle. Because the evidence established that Wade had possession of the vehicle through someone with the "authority to grant possession," appellant, the driver who had been granted control, also had standing to contest this search. Furthermore, Axt testified that appellant and Wade both agreed to "be responsible for the items in the vehicle." Thus, they both may have asserted a possessory interest in the seized items.
Assuming that appellant had standing, the state argues first that the search was consensual. In State v. Robinette (1997),80 Ohio St.3d 234, 242, the Ohio Supreme Court noted that "every search situation is unique unto itself and no set of fixed rules will be sufficient to cover every situation." The court noted that the United States Supreme Court, in Shneckloth v. Bustamonte
(1973), 412 U.S. 218, 93 S.Ct. 2041, outlined a totality of the circumstances test for determining whether consent is voluntary. That test serves "both the interest of allowing police to legitimately investigate under varying circumstances while protecting individuals from unreasonable searches and seizures." Robinette,80 Ohio St.3d at 243, citing Bustamonte, 412 U.S. at 225,93 S.Ct. at 2046.
The prosecution's evidence on consent was less than clear-cut. Axt testified that he first asked appellant if there were any weapons in the vehicle, and she responded negatively. Axt never searched appellant or any of the other occupants of the vehicle for weapons; he testified that he was suspicious of shoplifting, not a weapons violation. After inquiring about weapons, Axt immediately asked appellant if she would "mind" if he searched the car and she said she "wouldn't mind." Axt also stated that he told appellant that Wade had given permission to search the car, and further stated that he "didn't recall" if he had similarly told Wade that appellant gave her permission. Wade testified that she did not give permission to search the car, but that she was informed by Axt that appellant had consented. Significantly, Axt acknowledged that Wade clearly denied consent to any search of the trunk.
The scope of a consent search is limited by the terms of its authorization and is generally defined by the expressed object of the search. Florida v. Jimeno (1991), 500 U.S. 248, 251,111 S.Ct. 1801, 1804; State v. Arrington (1994), 96 Ohio App.3d 375. "The standard for measuring the scope of a suspect's consent is that of objective reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and suspect?" Arrington, 96 Ohio App.3d at 377 (citingFlorida v. Jimeno, 500 U.S. at 251, 11 S.Ct. at 1804).
Here, with deference to the trial court's credibility find ings, we find that there was sufficient evidence in the record for the trial court to find consent by both Wade and appellant to the initial search of the vehicle for weapons. Axt acknowledged, how ever, that Wade denied consent to the search of the trunk. Because the most damaging evidence was found in the trunk, that search must be justified on other grounds. We find that the search of the entire vehicle, including the trunk, was justified based upon probable cause.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require a police officer to first obtain a warrant based upon probable cause before conducting a search. See Shneckcloth v. Bustamonte (1973),412 U.S. 218, 219, 93 S.Ct. 2041, 2043. However, this warrant requirement is subject to a number of well-established exceptions, including an automobile exception. When a police officer has probable cause to believe a vehicle contains evidence of a crime, contra band, or other evidence that is subject to seizure, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all moveable containers and packages, that could logically conceal the objects of the search. United Statesv. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157.
To determine whether probable cause exists, we must examine the "totality of the circumstances" and make a "practical, common- sense decision whether, given all the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1982),462 U.S. 213, 238, 103 S.Ct. 2317, 2332. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause simply to shrug his shoulders and allow a crime to occur or a criminal to escape.Adams v. Williams (1972), 407 U.S. 143, 145-146, 92 S.Ct. 1921;State v. Hart (1988), 61 Ohio App.3d 37, 40-41. Rather, if during the initial stop, the officer observes "reasonably articulable facts that give rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation." State v. Robinette (1997), 80 Ohio St.3d 234,241.
"Probable cause" is generally defined as a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person had committed or was committing an offense. Statev. Ratcliff (1994), 95 Ohio App.3d 199, citing, Beck v. Ohio
(1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225-26. Ohio courts have interpreted this definition to include the "totality" of facts and circumstances within a police officer's knowledge. See State v.Finch (1985), 24 Ohio App.3d 38. In State v. Kessler (1978),53 Ohio St.2d 204, the Ohio Supreme Court noted that the requisite probable cause for an automobile search had been stated by the United States Supreme Court in Carroll v. United States (1925),267 U.S. 132, 149, 45 S.Ct. 280, 284, as "a belief reasonably arising out of circumstances known to the seizing officer, that an automo bile or other vehicle contains that which by law is subject to seizure."
In Kessler, a combination of factors provided the requisite probable cause: a passenger made furtive movements; the vehicle fit the description of a vehicle involved in recent burglaries; the vehicle ran a light when the officers began to follow; and, the officer recognized the driver as having been previously arrested for burglaries in the area. The court stressed that the furtive movement alone was insufficient to justify the search, but that the combination of factors meant that the officer had "more than a mere suspicion and under the circumstances the officer's actions were nothing more than good diligent police work at the proper time." Id. at 209 (citation omitted).
Here, the observation of the large saddlebags alone was insufficient to justify the search of the vehicle. However, there were four such bags for only three adult occupants; appellant was nervous and appellant and Wade gave conflicting accounts of their destination; all three adult occupants of the vehicle had theft records. These facts, along with the officer's training and experience and expertise in retail shoplifting provided, in combination, the requisite probable cause. Although no single factor is dispositive, the officer had more than a "mere suspicion or hunch," and the search of the entire vehicle, including the trunk, was justified based upon probable cause. The trial court properly denied appellant's motion to suppress and her assignments of error are therefore overruled.
JUDGEMENT: affirmed.
WALSH and VALEN, JJ., concur.