[Cite as *State v. Snow*, 2021-Ohio-3644.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 20CA000021 |
| ROBERT A. SNOW, JR. | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                                          Pleas, Case No.  20CR05-113


JUDGMENT:                                      Reversed and Remanded


DATE OF JUDGMENT ENTRY:          October 8, 2021


APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

CHARLES T. McCONVILLE              JOHN A. DANKOVICH
NICOLE E. DETTER                          KNOX COUNTY PUBLIC DEFENDER
KNOX COUNTY PROSECUTORS         110 East High Street
117 East High Street, Suite 234          Mount Vernon, Ohio  43050
Mount Vernon, Ohio  43050

*Wise, J.*

**{¶1}** Defendant-Appellant Robert A. Snow, Jr. appeals his sentence from the Knox County Court of Common Pleas after entering a plea of no contest to one count of possessing methamphetamine under R.C. §2925.11(A). Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On August 2, 2019, State Trooper Carte pulled over Appellant for exceeding the speed limit and not wearing a seat belt.

**{¶3}** Carte searched the vehicle and found a meth pipe. Carte then searched Appellant and found methamphetamines.

**{¶4}** On May 19, 2020, Appellant was indicted for Aggravated Possession of Drugs, in violation of R.C. 2925.11(A).

**{¶5}** On June 23, 2020, Appellant filed a Motion to Suppress.

**{¶6}** On October 1, 2020, the trial court held a hearing on Appellant's Motion to Suppress.

**{¶7}** At the hearing Carte testified that on August 2, 2019, he initiated a traffic stop of Appellant for exceeding the speed limit and not wearing his seat belt.

**{¶8}** Carte continued that he drove behind Appellant with his lights on for about 800 to 1,000 feet before Appellant pulled over. During that time, Carte witnessed Appellant make furtive movements to the center console.

**{¶9}** After Appellant pulled over, Carte testified he asked Appellant about the erratic driving and furtive movements, and Appellant told Carte he dropped his phone while reading a text message.

{¶10} Carte asked Appellant to get out of the car, brought him back to the police cruiser and asked to pat down Appellant to locate weapons. Appellant granted permission for Carte to search his person for weapons. During this first search, Carte found no weapons or contraband on Appellant.

{¶11} Carte testified he wanted to get Appellant out of the vehicle to perform a protective sweep for weapons or anything that would harm him. The dashcam footage of the stop shows Carte ordered Appellant in the back of his police cruiser after Carte finished the search of Appellant. Carte then read Appellant his *Miranda* rights. After Appellant acknowledged that he understood his rights, Carte then informed Appellant he would search Appellant's car for anything illegal. Appellant did not provide consent for Carte to search his car.

{¶12} While Appellant was detained in the back of the police cruiser, Carte performed a search of the vehicle finding a meth pipe wedged between the driver's seat and the center console.

{¶13} Carte returned to the police cruiser, searched Appellant, and found methamphetamines in Appellant's pocket.

{¶14} On October 7, 2020, the trial court denied Appellant's Motion to Suppress.

{¶15} On November 5, 2020, Appellant entered a plea of no contest and was found guilty by the trial court.

{¶16} On December 17, 2020, the trial court sentenced Appellant to eleven months suspended and community control with conditions.

**Assignments of Error**

{¶17} Appellant timely filed a notice of appeal and herein raises the following three Assignments of Error.

{¶18} "I. THE TRIAL COURT ERRED BY EATING FRUIT OF THE POISONOUS TREE.

{¶19} "II. THE TRIAL COURT ERRED IN APPLICATION OF THE SAFETY EXCEPTION.

{¶20} "III. THE TRIAL COURT ERRED BY EXPANDING THE SCOPE OF THE CONSENT SEARCH BEYOND THE DEFENDANT'S, AS WELL AS THE OFFICER'S UNDERSTANDING OF THE SCOPE OF CONSENT."

**Standard of Review**

{¶21} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶22} Appellate review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id*. The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id*. "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard." *Id.* That is, the appellate court will review the application of the legal standard to the facts *de novo. Id.*

**{¶23}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. *State v. Goins*, 5th Dist. Morgan No. 05-9, 2006-Ohio-74, ¶10. First, an appellant may challenge the trial court's finding of fact. *Id.* Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. *Id.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *Id.* When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist. 1994).

**I., II.**

**{¶24}** In Appellant's First and Second Assignments of Error, Appellant argues the trial court erred by not finding Trooper Carte impermissibly extended the traffic stop to search Appellant's vehicle, and that the Officer's Safety Exception should not apply. We agree.

> When a police officer's objective *justification* to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762, 767 (1997).

**{¶25}** An officer may briefly extend a traffic stop to inquire about the presence of illegal drugs or weapons. *Id.* However, the officer must ascertain reasonably articulable facts giving rise to a suspicion of criminal activity while inquiring to justify a more in-depth investigation. *Id.*

**{¶26}** In other words, a motorist may be detained beyond the time frame necessary to conduct the stop for the purposes of the traffic violation when "additional facts are encountered that give rise to a reasonable, articulable suspicion [of criminal activity] beyond that which prompted the initial stop[.]" *State v. Smith*, 117 Ohio App.3d 278, 285, 690 N.E.2d 567 (1st Dist.1996) citing *State v. Myers*, 63 Ohio App.3d 765, 771, 580 N.E.2d 61 (2nd Dist.1990).

**{¶27}** The warrant requirement contained in the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution is subject to several exceptions. A police officer may, for example, conduct a warrantless search of a vehicle if he has probable cause to suspect the vehicle contains contraband. *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. An officer also may search suspicious items in a vehicle if those items are in the officer's plain view. *Texas v. Brown* (1983), 460 U.S.730, 103 S.Ct. 1535, 75 L.Ed.2d 502. In addition, an officer may, with limited exceptions, conduct a warrantless search of a vehicle incident to a lawful arrest. *United States v. Robinson* (1973), 414 U.S. 218. Reasonable articulable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

**{¶28}** Moreover, the United States Supreme Court in *Michigan v. Long* (1983). 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, held a police officer may search the passenger compartment of a vehicle, limited to those areas in which a weapon may be placed or hidden, if the officer possesses "a reasonable belief based on specific articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and that the suspect may gain immediate control of weapons." *Id.* at 1050, citing *Terry v. Ohio* (1968), 392 U.S. 1, 21 88 S.Ct. 1868, 20 L.Ed.2d 889. The Court in *Long* held the issue was whether a reasonably prudent person under the circumstances would be warranted in believing his safety or that of others was in danger.

**{¶29}** In *State v. Ellis*, 5th Dist. Licking No. 14-CA-66, 2015-Ohio-472, Officers initiated a traffic stop for failure to have a front license plate. Upon pulling the vehicle over, the officer's noticed furtive movements by the driver and passenger toward the center of the car. *Id.* The officer asked the defendant out of the car, read the defendant his *Miranda* warnings, and after questioning the defendant ascertained from the defendant's responses that the defendant had used drugs earlier in the evening and was currently possessing drugs. *Id.*

**{¶30}** In *Michigan v. Long*, the Supreme Court found the officers had a reasonable belief that the defendant posed a danger if he were permitted to reenter his vehicle: the hour was late, they were in a rural area, the defendant appeared to be intoxicated, the defendant had driven his car into a ditch, and the officers observed a large knife in the interior of the car. *Michigan v. Long* (1983). 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

**{¶31}** In *State v. Kessler*, 53 Ohio St.2d 204, 208, 373 N.E.2d 1252, 1256 (1978), the Supreme Court of the State of Ohio held, "[f]urtive movements alone are not sufficient to justify the search of an automobile without a warrant." In *Kessler*, officers contend the passenger's furtive movements as police approached, the car fitting the description of a vehicle involved in recent burglaries in the area, the observation of the car in the same area several days before, the vehicle ran a red light when the police began to follow, and the officer recognizing the defendant from previous arrests for burglaries in the area justified a warrantless search.

**{¶32}** In the case *sub judice*, Carte testified that while pulling Appellant over for speeding and failure to wear his seat belt, Appellant made furtive movements toward the center of the automobile and drove erratically. After questioning Appellant about his furtive movements, removing Appellant from the vehicle, patting Appellant down, Mirandizing Appellant, and detaining Appellant in back of the police cruiser, Carte had no articulable facts other than observing furtive movements. Detaining Appellant in the back of the police cruiser while Carte searched Appellant's vehicle was not related to the original purpose of the stop, exceeding the speed limit and not wearing a seat belt. Based on the totality of the circumstances of this case, Carte did not possess reasonable suspicion to detain Appellant to conduct a search of Appellant's vehicle for "anything illegal."

**{¶33}** Appellant's First and Second Assignments of Error are sustained.

**III.**

{¶34}  In Appellant's Third Assignment of Error, Appellant argues his consent to being pat down for weapons immediately after being pulled over did not extend as consent to search his vehicle or for the second search of his person. We agree.

{¶35}  Again, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches. When an officer conducts a warrantless search, the state bears the burden of establishing the validity of the search. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564, 576. When an officer claims he obtained consent to search, the state must demonstrate that the consent was freely and voluntarily given and not the result of coercion. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875.

{¶36}  The scope of a consent search is limited by the suspect's authorization and is defined by the expressed objective of the search. *Florida v. Jimeno* (1991), 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 302. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id*. The burden is on the state to show that a consent search was performed within the scope of that consent. *State v. Arrington*, 96 Ohio App.3d 375, 377, 645 N.E.2d 96, 97 (12th Dist.1994).

{¶37}  The Second District Court of Appeals held that when a suspect consents to a pat down for weapons, and the officer retrieves and opens an object that is not a weapon, the officer has exceeded the consent of the search. *State v. Crawford*, 2nd Dist. No. 19316, 151 Ohio App.3d 784, 2003-Ohio-902, 786 N.E.2d 83.

**{¶38}** In *Crawford*, the officer asks the defendant if he can perform a quick pat down for weapons. *Id.* The defendant consents. *Id.* The officer found a piece of paper folded into a triangle and wrapped in a tissue. *Id.* Upon opening the paper the officer noted it was full of cocaine. *Id.* The Second District Court of Appeals held that once the officer retrieved the tissue and noted that it did not contain a weapon and that the officer could bend the paper, the officer was not permitted to open the paper. *Id.*

**{¶39}** In *State v. Arrington*, the officer asked to search the defendant's purse for weapons. *Arrington* at 376. The defendant consented to a search for weapons in the purse. *Id.* The officer found a cigarette case inside the purse, opened it and found crack cocaine. *Id.* The Twelfth District Court of Appeals held the defendant consented to a search of her purse for weapons, but a further search of the cigarette case inside her purse clearly exceeded the scope of the defendant's consent. *Id.* at 378.

**{¶40}** In the case *sub judice*, Carte instructed Appellant he would perform a pat down, asked Appellant if he had any weapons on him, and then asked if he could search. Carte found nothing on Appellant during the initial pat down. Carte then placed Appellant in back of Carte's police cruiser, performed a warrantless search of Appellant's vehicle, and found a meth pipe wedged between the driver's seat and the center console. At this time, Carte ordered Appellant out of the police cruiser to stand with his hands behind his back, and performed a more thorough search of Appellant, pulling out Appellant's pockets and items from his pockets. In Appellant's pockets, Carte discovered methamphetamines.

**{¶41}** A reasonable person would have understood Carte's initial request to perform a pat down to mean the officer wanted to check to see if Appellant was carrying

any weapons. Carte's search of the vehicle and second search of Appellant after finding a meth pipe in Appellant's vehicle clearly exceeded the scope of Appellant's initial consent of a pat down for weapons.

{¶42} Appellant's Third Assignment of Error is sustained.

{¶43}  For the foregoing reasons, the judgment of the Court of Common Pleas of Knox County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/br 0929