**[Cite as *State v. Wells*, 2024-Ohio-236.]**

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Andew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023 CA 0021 |
| SHAWN H. WELLS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Appeal from the Coshocton County Court of
                            Common Pleas, Case No. 2022 CR 0148


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     January 24, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

E. MARIE SEIBER                           KATELYNN R. DAVIS
Assistant Coshocton Publilc Defender      Assistant Prosecuting Attorney
239 N. Fourth Street                      318 Chestnut St.
Coshocton, OH 43812                       Coshocton, OH 43812

*Gwin, J.*

{¶1} Defendant-appellant Shawn H. Wells ["Wells"] appeals from the May 25, 2023 and the May 31, 2023 Judgment Entries of the Coshocton County Court of Common Pleas overruling his motion to suppress evidence.

*Facts and Procedural History*

{¶2} On December 19, 2022, Wells was indicted with one count of Possession of a Fentanyl-Related Compound, a felony of the fifth degree in violation of R.C. 2925.11(A)/ 2925.11(C)(11)(a).

{¶3} On April 17, 2023, Wells filed a motion to suppress. [Docket Entry No. 20]. The state responded on May 15, 2023. [Docket Entry No. 23]. On May 18, 2023 a hearing was held on the motion to suppress. The following evidence was presented during the hearing on Wells' motion to suppress[1].

{¶4} On July 18, 2022, at approximately 12:55 a.m., Deputy Jeremy Johnson was on duty as a road patrol officer for the Coshocton County Sheriff's Office when he came upon an unoccupied pickup truck blocking an alleyway in the City of Coshocton. When looking inside the vehicle, Deputy Johnson spotted a large knife open on the console. Deputy Johnson first radioed a dispatcher to report the license plate number, and then checked with neighbors to locate the owner of the truck. Deputy Johnson was on the scene for a brief period of time when he spotted Wells running toward the truck carrying a gallon jug of gasoline. Wells resided near the location of his disabled truck.

{¶5} Deputy Johnson's body cam video, State's Exhibit 1, shows Deputy Johnson and another deputy allow Wells to move freely in and about the disabled truck

---

[1] The facts are taken in part from the May 25, 2023 Judgment Entry overruling Wells' motion to suppress. [Docket Entry No. 31].

in search of an item Wells could use as a funnel to pour the gasoline. At one point the deputies allowed Wells to use a knife to cut into a plastic water bottle. Ultimately, Wells poured the gasoline through a paper funnel and then started cranking the ignition. After many unsuccessful attempts, Deputy Johnson finally said, "Shawn, could you just do me a favor? Step out and give that thing a break for a minute."

{¶6}    Deputy Johnson then asks Wells, "You don't have any more weapons on you? No more knives, guns, anything?" Wells denies having any weapons, and Deputy Johnson then asks, "Do you mind if I search for weapons and contraband then?" Initially, Wells responds by saying, "I don't see what the point is." Deputy Johnson asks again, and Wells replies, "I don't have anything on me. You can search me if you want."

{¶7}    Deputy Johnson then conducted a search of Wells' including his pockets and observed a tin foil packet, something the deputy believed to be illegal narcotics, in Wells' right cargo pocket. As a second deputy, Joseph Corpman, was going to retrieve gloves, Wells began to flee. Both deputies chased after Wells. Deputy Corpman caught up to Wells first and tried to restrain him; however, Wells resisted and attempted to get away. When Deputy Johnson caught up, he shoved both Wells and Deputy Corpman to the ground. Due to Wells continued resistance, he was tazed in the back of the leg. Wells was then handcuffed and returned to the scene where the vehicle was located. Wells was then searched incident to arrest and the tin foil packet was removed from Wells' pocket. BCI testing confirmed that the tin foil packet found in Wells' right pants pocket contained Fentanyl.

{¶8}    By Judgment Entry filed May 25, 2023, the trial judge denied Wells' motion to suppress. On May 30, 2023, Wells filed a Motion for additional findings concerning the

search of Wells' pockets. [Docket Entry No. 32]. By Judgment Entry filed May 31, 2023, the trial judge made the additional findings. [Docket Entry No. 33].

{¶9} A change of plea hearing was held on June 20, 2023. Wells appeared with counsel and agreed to enter a plea of no contest to the single count found within the indictment, Possession of a Fentanyl-Related Compound, a felony of the fifth degree. The judge accepted the plea of no contest and found Wells guilty. Sentence was deferred pending a pre-sentence investigation report.

{¶10} On August 8, 2023, Wells and counsel appeared for sentencing. Wells was sentenced to Community Control Sanctions for a period of three years. Wells was advised that if he violated the terms and conditions of community sanctions, he shall be sentenced to a definite term of incarceration up to six, seven, eight, nine, ten, eleven, or twelve months in a state penal institution. Wells was ordered to pay the Public Defender fee, a monthly supervision fee, and the costs of prosecution. Bond was released.

*Assignments of Error*

{¶11} Wells raises two Assignments of Error,

{¶12} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE APPELLANT WAS UNLAWFULLY ORDERED TO EXIT HIS VEHICLE.

{¶13} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE SCOPE OF THE SEARCH EXCEEDED THE CONSENT GIVEN AND THE LIMITS OF A *TERRY* SEARCH."

I. & II.

{¶14} In his First Assignment of Error, Wells argues that the trial judge erred in denying his Motion to Suppress because Wells was unlawfully ordered to exit his vehicle.

In his Second Assignment of Error, Wells contends the scope of the search by Deputy Johnson of Wells' pockets exceeded the consent given by Wells and the limits of a *Terry* pat-down frisk.

**Standard of Appellate Review**

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Issue for Appellate Review**: *Whether the trial judge erred in finding that Wells voluntarily consented to the search of his pockets.*

{¶16}   Contact between police officers and the public can be characterized in three different ways. *State v. Richardson,* 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147 (6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* supra*,* at 434-435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer." 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶17}   The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson,* supra*; Flowers,* 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983). In holding that the police officer's actions were reasonable

under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry:*

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612(1972).

{¶18} The Fourth Amendment requires that officers have had a "reasonable fear for his own or others' safety" before frisking. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (*quoting Terry,* 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Whether that standard is met must be determined "'from the standpoint of an objectively reasonable police officer,'" without reference to "the actual motivations of the individual officers involved." *United States v.*

*Hill* ,131 F.3d 1056, 1059 (D.C. Cir. 1997), (*quoting Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996)).

{¶19} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson,* supra*; Flowers,* 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it, whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz* (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623(1975).

{¶20} In *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389(1991), the United States Supreme Court reiterated that,

> [A] consensual encounter does not trigger Fourth Amendment scrutiny. See *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L. Ed.2d 889. Even when officers have no basis for suspecting a

particular individual, they may generally ask the individual questions, *Florida v. Rodriguez,* 469 U.S. 1, 5-6, 105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247, and request consent to search luggage, *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required.

501 U.S. at 434-35, 111 S.Ct. 2382, 115 L.Ed.2d 389. The courts in Ohio have taken a similar approach:

Because the vehicle was parked, appellant was not subjected to a seizure *per se* as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts ... have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making the Fourth Amendment inapplicable. See, e.g*., State v. Welz* (Dec. 9, 1994), Lake App. No. 93-L-137, unreported; *Cuyahoga Falls v. Sandstrom* (June 21, 1995), Summit App. No. 17000, unreported; *State v. Kiggans* (Nov. 20, 1995), Stark App. No. 1995CA00157, unreported; *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported.

*State v. Lott*, 11th Dist. No. 96-A-0011, 1997 WL 799426(Dec. 26, 1997) at *5.

{¶21}   In the case at bar, the deputies did not stop Wells or his vehicle. As the trial judge found, the deputies were simply rendering aid to a disabled vehicle blocking a public alleyway. Wells was not compelled to remain at the scene by the officers; rather, his car was blocking the public alleyway and he needed to move it. After putting gasoline in the

tank and several unsuccessful attempts to start the engine, the circumstances warranted a different approach. Deputy Johnson simply asked Wells to step out so the situation could be assessed. The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith*, 45 Ohio St.3d 255, 258–259, 544 N.E.2d 239, 242(1989), *reversed sub nom. Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464(1990)[2]; *State v. Crossen*, 5th Dist. Ashland No. 2010-COA-027, 2011-Ohio-2509, ¶13. Accordingly, Deputy Johnson's approach and encounter with a stationary vehicle was consensual in nature, thereby making the Fourth Amendment inapplicable.

**{¶22}** Upon review, under the totality of the circumstances, we conclude the events in the case sub judice constituted a consensual encounter such that the Fourth Amendment was not implicated. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497(1980).

**{¶23}** Wells next contends that the search of his pockets was not authorized by his consent to be searched.

**{¶24}** It is well-established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search. *State v. Barnes*, 25 Ohio St.3d 203, 208, 495 N.E.2d 922 (1986), *citing Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453(1946), *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36

---

[2] The United States Supreme Court held that an incident search may not precede an arrest and serve as part of its justification. *Smith v. Ohio,* 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990). The Court further found that the defendant did not abandon the paper bag when he threw it on his car and turned to face the officer. Id. at 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464.

L.Ed.2d 854(1973), State *v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 491 N.E.2d 1129(1986).

**{¶25}** In *Schneckloth v. Bustamonte*, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. 412 U.S. at 227-228, 93 S.Ct. 2041, 36 L.Ed.2d 854. *See, State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); United *States v. Drayton*, 536 U.S. 194, 205, 122 S.Ct. 2105, 2113, 153 L.Ed.2d 242 (2002). Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte*, 412 U.S. at 235, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *State v. Barnes,* 25 Ohio St.3d 203, 495 N.E.2d 922 (1986); *State v. McConnell*, 5th Dist. Stark No. 2002CA00048, 2002-Ohio-5300, 2002 WL 31270071, ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. "Voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997).

**{¶26}** It is important to keep in mind, however, that an individual may limit the scope of his consent to search, and he may revoke that consent entirely. *See, e.g., United*

*States v. Drayton*, 536 U.S. at 207, 122 S.Ct. 2105, 153 L.Ed.2d 242; *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Of course, an item properly seized prior to the withdrawal of consent is not subject to suppression under the Fourth Amendment. *State v. Riggins*, 1st Dist. Hamilton No. C0306262, 2004-Ohio-4247, 2004 WL 1800714.

{¶27} The prevailing rule among Ohio courts is that consent to a search may be limited in time, duration, area, and intensity or may be revoked at any time, even after the search has begun. *See Lakewood v. Smith*, 1 Ohio St.2d 128, 130, 205 N.E.2d 388 (1965); *State v. Crawford,* 151 Ohio App.3d 784, 2003-Ohio-902, 786 N.E.2d 83 (2nd Dist.); *State v. Mack*, 118 Ohio App.3d 516, 519, 693 N.E.2d 821 (6th Dist. 1997); *State v. Rojas*, 92 Ohio App.3d 336, 635 N.E.2d 66 (8th Dist. 1993); *State v. Arrington*, 96 Ohio App.3d 375, 645 N.E.2d 96 (12th Dist. 1994).

{¶28} The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991), *citing  Illinois v. Rodriguez,* 497 U.S. 177, 183-189, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990);  *Florida v. Royer*, 460 U.S. 491, 501-502, 103 S.Ct. 1319, 1326-1327, 75 L.Ed.2d 229 (1983) (opinion of WHITE, J.);  id., at 514, 103 S.Ct. at 1332 (BLACKMUN, J., dissenting). The scope of a search is defined by its expressed purpose or by the nature of the object being sought. *See Jimeno, citing United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *see, also, Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 124 S.Ct. at 2457, 159 L.Ed.2d 292(2004).

{¶29} The Second District Court of Appeals held that when a suspect consents to a pat down for weapons, and the officer retrieves and opens an object that is not a weapon, the officer has exceeded the consent of the search. *State v. Crawford*, 2nd Dist. No. 19316, 151 Ohio App.3d 784, 2003-Ohio-902, 786 N.E.2d 83. *See, State v. Snow,* 5th Dist. Knox No. 20CA00021, 2021-Ohio-3644, ¶37. In *Crawford*, the officer asked the defendant if he can perform a quick pat down for weapons. Id. The defendant consents. Id. The officer found a piece of paper folded into a triangle and wrapped in a tissue. Id. Upon opening the paper the officer noted it was full of cocaine. Id. The Second District Court of Appeals held that once the officer retrieved the tissue and noted that it did not contain a weapon and that the officer could bend the paper, the officer was not permitted to open the paper. Id.

{¶30} In *State v. Arrington*, the officer asked to search the defendant's purse for weapons. *Arrington* at 376. *See, State v. Snow,* 5th Dist. Knox No. 20CA00021, 2021-Ohio-3644, ¶39. The defendant consented to a search for weapons in the purse. Id. The officer found a cigarette case inside the purse, opened it and found crack cocaine. Id. The Twelfth District Court of Appeals held the defendant consented to a search of her purse for weapons, but a further search of the cigarette case inside her purse clearly exceeded the scope of the defendant's consent. Id. at 378.

{¶31} At the suppression hearing, there was testimony that Deputy Johnson asked Wells for permission to search his person for "weapons or contraband." T. at 19; State's Exhibit 1. We find that the trial court did not err in finding that the consent to search

was voluntary, uncoerced and valid, and included the search of Wells' pockets. At the point Deputy Johnson observed the tin foil package, Wells fled and resisted the deputies.[3]

{¶32}  We are unpersuaded that Wells acted under coercion or merely submitted to a claim of lawful authority. We are further unpersuaded that the search of Wells' pockets exceeded the scope of Wells' consent. Based on the totality of the circumstances presented, we conclude that Wells gave clear, open-ended permission to Deputy Johnson to search his person, including his pockets, for weapons or contraband.

{¶33}  The trial judge did not err in denying the Motion to Suppress.

{¶34}  Wells' First and Second Assignments of Error are overruled.

{¶35}  The judgment of the Coshocton County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

King, J., concur

---

[3] The trial judge made no finding with respect to a search incident to arrest.